No. 124.—SAMUEL C. ELAM, plaintiff in error, *vs.* WILLIAM A. LEWIS, defendant in error.

[1.] The bar of Georgia are not privileged from arrest under *ca. sa.*

*Ca. sa.* in Fulton Superior Court. Motion to discharge defendant. Decided by Judge BULL, October Term, 1855.

William A. Lewis sued and obtained a judgment against Samuel C. Elam, a practising Attorney in the several Courts of Law and Equity in this State. A *ca. sa.* was issued from the judgment, and the defendant, was arrested under it and gave bond for his appearance at Court.

When the cause was called, Counsel for defendant moved to discharge the defendant on the ground "that a practising Attorney of the several Courts of Law and Equity in said State of Georgia, is not liable to arrest and imprisonment upon *mesne* or final process in civil causes, and may be discharged upon motion.

The Court over-ruled the motion, and Counsel for defendant excepted.

BLECKLEY, for plaintiff in error.

SIMPSON; HARRIS, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] That by the Common Law, Attorneys are privileged from arrest, either on *mesne* or final process, there can be no doubt. And the books show that New York, New Jersey and other American States, recognized their right to this exemption in this country. But the fact that no such claim has ever been set up here, is, of itself, conclusive against its validity.

By the Constitution, members of the General Assembly.

are protected from arrest during their attendance upon the Legislature, and for ten days before and after. If it required the organic law to effect this, the implication is strong against its existence in the present case. If the objection to this arrest be valid, the principle goes much further—even to the extent of holding that Attorneys are not liable to be sued by ordinary process, but by bill. Neither are they amenable to bail process; for such is the equally well established doctrine of the Common Law. Who, in this State, is prepared to carry out this doctrine to all the conseqnences to which it necessarily leads? It will exempt Attorneys from all public duties whatever, *requiring personal service!* (See *Cerard's Case,* 2 *W. Blackstone's R.* 1123.)

There is an essential difference in the relation which the profession sustains, both to the Courts and the public, in England and in this country. I need not point it out. There Attorneys are regulated by Statute, and are subject to many restrictions, having a rate of fees settled, either by Statute or established usage, and required to be fixed by the taxation of an officer of the Court. No such regulations are known here; their employment is matter of contract.

Suppose the proposition were announced, that an Attorney in Georgia could not maintain a suit for his fees? That his business or profession by which, like the merchant and the mechanic, he earns the daily bread for himself and his family, is so much more honorable than the calling of other members of the community, as to prevent him from enforcing payment for a fair compensation for his services on that account? Would not such an idea be wholly inconsistent with our notions of equality? And yet, it is the established law of England, that a Counsellor or Barrister cannot maintain an action for his fees.

Any decision which separates the bar from the people, in sympathy or identity of privileges, would prove one of the greatest curses which could befall the profession. From the

day when it is made, the bar itself will receive an impulse downwards in the eyes of the community.

On the bill before Parliament to exempt the servants of Peers from arrest, Lord *Mansfield* said, that he was neither a good servant nor an honest man who would contract debts which he was either unwilling or unable to pay. A man may be unfortunate, but thank God he cannot be imprisoned, in this State, except for crime. A good character is the shield of Zeus, with which an honest man may ward off the assaults of the most hard-hearted creditor. We owe it, therefore, to the people at large, as well as to a high-minded and honorable bar, to affirm the judgment of the Circuit Court.

We would not say, that if an Attorney be taken on a *ca. sa.* while in attendance on the Court and actually engaged in transacting the business of his client, that he would not be discharged. The suitor, himself, if conducting his own cause, undoubtedly would be; and by the Constitution, he is entitled to appear personally or *by Attorney*. Witnesses are exempt, because the public justice of the country must override private interests. For the same reason, and upon general principles, Clerks, Sheriffs and Judges, themselves, could not be arrested during the sitting of the Court, for the sake of suitors and the public interest. These trusts are confided, under the law, by the people, to particular agents; and when obstructed, cannot be executed by others. It is but seldom, if ever, known that the same reasons apply to Attorneys. It rarely occurs that the duties committed to them may not be discharged by others.

We might, perhaps, notwithstanding the concession in the beginning of this opinion, have put the judgment in this case on narrower grounds, and have held, that it was an exception to the rule that Attorneys are privileged from arrest; for it is stated upon old and highly respectable authority, that an Attorney shall not have his privilege when sued by another Attorney, if both be of the same Court. (2 *Roll. Abr.* 274; *Barnes*, 35; 2 *Modern*, 298.) It is admitted that Mr. Lewis is an Attorney as well as Mr. Elam. But we preferred that

·so extensive a question should be determined upon the broad foundation, that the general justice of the country should alike pervade all ranks and professions.